# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | | |
|---|---|---|---|
| TIMOTHY ROGERS | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 18 C 3107 | |
| v. | ) | | |
| | ) | Judge Sara L. Ellis | |
| WHITE CONSTRUCTION, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## OPINION AND ORDER

Plaintiff Timothy Rogers filed this lawsuit after he sustained injuries while driving a cement truck for his employer, Welsch Ready Mix, to deliver concrete to Defendant White Construction, Inc.'s jobsite. Rogers' complaint includes allegations of premises liability and negligence against White, and White moves for summary judgment. Because the record fails to demonstrate that White possessed the roadway at issue or controlled how Rogers completed his work, the Court grants White's motion for summary judgment [34].

## BACKGROUND[1]

Between July 2015 and August 17, 2016, Rogers worked for Welsch Ready-Mix. Upon his hiring, Rogers participated in a two-week training program during which Welsch paired him with an experienced Welsch truck driver who showed him how to operate a truck and dispense concrete. On August 3, 2016, Rogers was involved in an accident while delivering concrete to the Kelly Green Wind Farm, White's jobsite. Rogers had delivered concrete there for two-and-a-half months prior to the accident. On Welsch's first day delivering at the Wind Farm, White met

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Facts and the accompanying exhibits. Because neither side has objected to the consideration of any facts on hearsay or other grounds at the summary judgment stage, the Court considers them admissible for purposes of resolving this motion. The Court considers all facts in the light most favorable to Rogers, the non-movant.

with all Welsch drivers, including Rogers, to discuss the roads on which drivers could travel, speed limits, and designated routes to the Wind Farm. Aside from this meeting, White did not provide any additional safety instructions and did not require Rogers to watch any safety videos at the jobsite. Nor did Rogers did attend safety meetings or receive any safety instructions to work at the jobsite. There were about twelve Welsch drivers working on the project and they made between nine and fifteen deliveries a day. Rogers previously drove the same Welsch truck and had never experienced any mechanical problems.

On August 3, 2016, Rogers was driving north on Road 19000 West to make his last delivery of the day, to Turbine G-5. Rogers had already made between eleven and twelve deliveries to the Wind Farm that day, and Welsch drivers made a total of about forty-five prior deliveries to Turbine G-5. The road was made of "rock/gravel": the roads on the project were reinforced with Portland cement, and White put rock on top of the road after the cement was added. The roads on the Wind Project were eighteen feet wide, as dictated by the County road commissioner. To complete the delivery, Rogers was to turn left onto 19000 West from 7000 South, drive northbound for approximately one mile, and turn left onto 6000 South at a stop sign. Roughly 300 truckloads of concrete passed through that intersection to complete turbines in the area. Rogers completed the turn onto 19000 West, drove about three quarters of a mile to a mile, and was not far from the 6000 South intersection. Rogers recalls a man driving a white car southbound, towards him, in the center of the road. To avoid hitting the car head on, Rogers moved his vehicle to the right side of the road. The next thing Rogers remembers is waking up in an ambulance.

Following the accident, a man driving a small white pickup truck waved over Kyle Strawson, Rogers' coworker. At the scene, Strawson did not see any evidence of the road giving

way or breaking off.  Shortly after the accident, another coworker, Chris Mahalik, arrived at the scene.  Mahalik believed the road was insufficient because he had to stop his truck to allow another truck to pass but never raised concerns about the width of the road.  Indeed, there is no evidence that any Welsch drivers, including Rogers, complained about the roadway's condition.  Within twenty-five minutes of the accident, Chris Pusatari, Welsch Quality Control Director and On-site Welsch Senior Manager at the Wind Farm, was on site.  Pusatari did not see any evidence of road collapse or the road shoulder giving way at the scene of the accident.  Ross Combes, White Senior Project Manager at the Wind Farm, visited the site shortly after the accident and found the cement in the road had not failed and the road did not deflect.  Michael DeJong, Welsch's President, was at the job site within forty-five minutes of the accident and saw Rogers' tire marks gradually drift off the road.  DeJong did not see any evidence of the road shoulder collapsing or the road giving way.  After investigating Rogers' accident, Rogers' supervisor, Eggert, "did not conclude that the roadway caused or contributed to the accident." Doc. 36 ¶ 72.  No Welsch drivers complained to Eggert about unsafe road conditions, narrow roads, or road shoulders while Welsch was making deliveries to the Wind Farm.

Rogers filed a complaint alleging negligence and premises liability against White. Rogers claims that unsafe road conditions caused his accident, specifically, a temporary road on top of an existing road, loose gravel, and a soft shoulder.  But Rogers is not aware of any issue with the soft shoulder or experiencing any loose gravel when he pulled his vehicle to the right.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Despite participating in the drafting of the Joint Statement of Undisputed Facts, Rogers did not file a response to White's motion for summary judgment. His failure to do so, however, does not automatically entitle White to judgment on the Rogers' claims. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). Instead, the Court must still ensure that White is entitled to judgment as a matter of law. *Id.*

## I.      Premises Liability

White argues that the Court should grant summary judgment on Rogers' premises liability claim because White did not possess the roadway where the accident occurred and therefore did not owe Rogers a duty. Courts in Illinois look to Section 343 of the Second Restatement of Torts to assess premises liability. *See O'Neill v. Ford Motor Co.*, No. 05 C 7316,

2009 WL 4757268, at *19 (N.D. Ill. Dec. 9, 2009) (citing *Cooper v. Carl A. Nelson & Co.*, 211

F.3d 1008,1015 (7th Cir. 2000)).  Under Section 343:

> A possessor of land is subject to liability for physical harm caused to his invitees
> by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the
>> condition, and should realize that it involves an unreasonable risk of
>> harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger, or will
>> fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.  As a prerequisite to premises liability, the defendant must

be a possessor of the land at issue.  *See Gammons v. Crown Castle USA, Inc.*, No. 15-CV-02310,

2016 WL 1270453, at *3 (N.D. Ill. Mar. 31, 2016).  A possessor is "a person who is in

occupation of the land with intent to control it."  *Madden v. Paschen*, 395 Ill. App. 3d 362, 375

(2009) (quoting Restatement (Second) of Torts § 328E (1965)).  A possessor must occupy and

intend to control the land, rather than the activities or individuals thereon.  *See Racky v. Belfor

USA Grp., Inc.*, 2017 IL App (1st) 153446, ¶ 94.  "Only the party in control of the premises can

be held liable for a defective or dangerous condition," but this "does not extend to risks created

by open and obvious conditions."  *Id.* (citations omitted) (internal quotation marks omitted).

Here, nothing in the record demonstrates that White satisfies the definition of

"possessor."  The facts indicate that White added rock to the top of the roadway after it was

reinforced with cement.  However, this fact alone fails to demonstrate that White possessed the

roadway.  Even the allegations in Rogers' complaint, which are not evidence at the summary

judgment stage, do not demonstrate control.  *See, e.g.*, *Nisenbaum v. Milwaukee Cty.*, 333 F.3d

804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence.").  Rogers' allegation

that White controlled the manner in which he made deliveries relates to White's control over activities on the roadway, rather than the roadway itself. *See O'Connell v. Turner Constr. Co.*, 409 Ill. App. 3d 819, 825 (2011) (concluding that a general contractor was not a possessor and explaining "it cannot be said here that control of people or activities on the premises denotes dominion over the land"). And even if the roadway was the only means of ingress and egress to the jobsite, as Rogers claims, the evidence before the Court does not link this to White's control. *See id.* (explaining that the plaintiff's allegations including that the defendant had responsibility for the site conditions were insufficient to demonstrate an intent to control the premises). Additionally, Rogers claims that White did not provide an access road wide enough for two trucks driving in opposite directions to safely pass. However, the County road commissioner dictated the width of the roads, and Welsch drivers—including Rogers—regularly passed each other on the road.

Rogers has failed to create an issue of material fact that White was the possessor of the road, and summary judgment for White is proper on Rogers' premises liability claim.

## II.    Negligence

White next argues that the Court should grant summary judgment on Rogers' negligence claim[2] because White did not control the operative details of Rogers' work nor did it supervise him. Generally, under Illinois law, a party who hires an independent contractor is not liable for

---

[2] In its motion for summary judgment, White puts forth independent arguments to dismiss negligence and construction negligence causes of action. However, the analysis is the same under both theories. Illinois courts do not distinguish between the two causes of action and the elements are identical. *See Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 65 (explaining that, with respect to a construction negligence cause of action, the plaintiff's theories were grounded in common-law negligence); *Calderon v. Residential Homes of Am., Inc.*, 381 Ill. App. 3d 333, 340 (2008) (explaining that Restatement Section 414 "encapsulates commonlaw negligence principles" and therefore "construction negligence claims are evaluated in accordance with the common law negligence principles encapsulated by the Restatement"); *see also Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (citing Restatement Section 414 in evaluating whether the defendant owed a duty of care in a negligence cause of action).

its acts. *See Dahlstrand v. FCA US, LLC*, No. 15 CV 7603, 2019 WL 214825, at *6 (N.D. Ill.

Jan. 16, 2019) (quoting *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 838

(1999)). Restatement Section 414 provides an exception, stating that "[o]ne who entrusts work

to an independent contractor, but who retains the control of any part of the work, is subject to

liability for physical harm to others for whose safety the employer owes a duty to exercise

reasonable care, which is caused by his failure to exercise his control with reasonable care."

Restatement (Second) of Torts § 414 (1965). For this exception to apply, "the employer must

have retained at least some degree of control over the manner in which the work is done." *Id.*

cmt. c; *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 606 (7th Cir.

2016) ("The comments to § 414 make clear that retaining these general rights do not give rise to

liability under the retained control exception."); *Avalos v. Pulte Home Corp.*, 474 F. Supp. 2d

961, 965 (N.D. Ill. 2007) ("[T]he level of control required in order to trigger section 414 is

significant."). A defendant who "has merely a general right to order the work stopped or

resumed, to inspect its progress or receive reports, to make suggestions or recommendations, or

to prescribe alterations and deviations" does not retain adequate control. *Gammons*, 2017 WL

365559, at *6 (citing *Bokodi v. Foster Wheeler Robbins, Inc.*, 312 Ill. App. 3d 1051, 1059

(2000)).

      Here, there is no evidence that White had control over how Rogers completed his work.

The complaint broadly alleges that the "manner in which [ ] delivery was made was under the

exclusive and sole control of the Defendant." Doc. 1 ¶ 11. However, there are no facts that

support this, and the joint statement of facts suggests otherwise. First, Welsch, not White, gave

Rogers job assignments, and Rogers used Welsch equipment. *See Kotecki v. Walsh Constr. Co.*,

333 Ill. App. 3d 583, 587 (2002) (finding no evidence of control by the general contractor where

7

the plaintiff's employer controlled the manner in which he completed his assignment, provided

the supplies, and coordinated his assignments). Second, White required that Welsch conduct its

own safety meetings. Third, the County road commissioner dictated where drivers could go, and

there are no facts indicating that White instructed Rogers to use that route. *See Miller v. Ill.*

*Cent. R.R. Co.*, 474 F.3d 951, 956 (7th Cir. 2007) (affirming summary judgment for the

defendants and explaining the case might be different if the defendants instructed the plaintiff to

use the railroad crossing to access the jobsite). The fact that the access road was the only way of

ingress and egress to the jobsite is insufficient to show that White controlled Rogers' work. *See*

*id.* (explaining that the plaintiff's testimony that the railroad crossing was where he entered the

construction site was "far short of signifying control").

Further, the contract between White and Welsch expressly gave Welsch control. The

contract provides that Welsch "shall act as an independent contractor and not as the agent of

Company or Owner in performing this Agreement maintaining complete control over its

employees and all of its lower-tier suppliers and Subcontractors." Doc. 36-13 at 8. *Compare*

*Schaefer*, 839 F.3d at 606 (explaining that a contract that expressly gave control to the contractor

demonstrated that the defendant did not "retain control" for purposes of Section 414), *with*

*Avalos*, 474 F. Supp. 2d at 966 (finding control and noting that the subcontract stated that the

subcontractor must deliver materials in the manner directed by the General Contractor). The

contract further states that Welsch was responsible for "performing all work and furnishing all

materials, machinery, equipment, supplies, supervision and services required in the Contract

Documents." Doc. 36-13 at 5. Additionally, in the contract, Welsch "acknowledge[d] and

agree[d] that it is responsible for its employees' safety, and safety programs, as well as the safe

operations of its own employees and the employees of its Sub-subcontractors." *Id.* at 12; *see*

8

*Stanley v. Ameren Ill. Co.*, 982 F. Supp. 2d 844, 854 (N.D. Ill. 2013) (granting summary judgment for the defendant and explaining that "although it had a general safety program and held meetings, there is no evidence in the record that [the defendant] went to 'great lengths' to control safety issues"). Finally, the contract indicates that White did not require Rogers to use certain roadways, stating that White "has included the roads that [Welsch] can utilize for hauling concrete," but "[i]f [Welsch] uses roads not included on the hauling route map, [Welsch] will be responsible for all any costs and/or charges incurred." Doc. 36-13 at 37. Thus, although White provided suggested roads, Welsch employees were permitted to use other roads.

Accordingly, the evidence fails to indicate that White retained sufficient control over Rogers' work. As a matter of law, therefore, White did not owe Rogers a duty under the retained control exception, and Rogers cannot prevail on his negligence claim.

## CONCLUSION

For the foregoing reasons, the Court grants White's motion for summary judgment [34]. The Court enters judgment for White on Rogers' complaint and terminates this case.

Dated: April 21, 2020

SARA L. ELLIS
United States District Judge

9